FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHRIS G. ALEVRAS,                    :
                                     :
                    Plaintiff,       :
                                     :          **OPINION**
            v.                       :
                                     :          Civ. No. 03-3780 (WHW)
JOSEPH TACOPINA, TAMA BETH           :
KUDMAN, JOSEPH BENFANTE,             :
Individually, Jointly,               :
and Severally                        :
                                     :
                    Defendants.      :

### Walls, District Judge

Defendants Joseph Tacopina ("Tacopina"), Tama Beth Kudman ("Kudman"), and Joseph Benfante ("Benfante") (collectively, "Defendants") move for (i) an order granting summary judgment and (ii) an order dismissing plaintiff Chris Alevras' ("Alevras") complaint for failure to state a claim.  Pursuant to Fed. R. Civ. P. 78, the motion is decided without oral argument. Defendants' motion for summary judgment is granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises out of Alevras' dissatisfaction with the legal representation provided to him by Defendants during his 1997 prosecution for fraud and firearm possession in the United States District Court, District of New Jersey, before the Honorable Judge Joseph A. Greenaway. Early in 1997, Alevras was charged in a 38-count indictment including counts of mail, bank and wire fraud (the "99 case"), and later was charged in a criminal information for one count of unlawful possession of a firearm (the "172 case").  On February 19, 1997, Alevras was arrested

**FOR PUBLICATION**

and brought before the court for arraignment.  Pursuant to the Criminal Justice Act ("CJA"),

Alevras filed an *in forma pauperis* application and the court assigned Jeffrey Bronster, Esq.

("Bronster") as defense counsel.

      On or about March 1, 1997, Bronster and Alevras met with the government to discuss a

plea agreement.  On March 14, 1997, Alevras pled guilty before Judge Greenaway to bank fraud,

submission of a false claim to the United States, and unlawful possession of a firearm by a

convicted felon.

      In June of 1997, Alevras sought and obtained Judge Greenaway's permission to replace

Bronster with counsel at his own expense.  Judge Greenaway conditioned Alevras' request for

new counsel on his first paying Bronster the full value of his legal service.  On June 30, 1997,

Alevras met with Tacopina and Kudman to discuss the possibility of retaining them.  Alevras

alleges that, at this initial meeting, Tacopina and Kudman fraudulently induced him to retain

them as defense counsel by falsely holding themselves out as experts in federal criminal law.

Alevras also alleges that, during this meeting, Tacopina and Kudman promised to keep him

accurately and timely informed as to all case developments and promised to obtain his consent

before making any substantive decisions.  In reliance on these promises, Alevras claims he

retained Tacopina and Kudman as defense counsel and paid $19,000.00 of the $20,000.00 fee

requested.

      Alevras was initially released on bail, but a warrant for his arrest was issued after he

failed to appear for a scheduled status conference on July 1, 1997.  Alevras surrendered on July

2, 1997, at which point Judge Greenaway held a hearing to determine whether to revoke Alevras'

-2-

FOR PUBLICATION

bail and remand him until his sentencing. At the July 2, 1997 hearing, Alevras told the judge that he had retained Tacopina, but Judge Greenaway found that Alevras had misrepresented his financial status to the court in order to obtain a CJA attorney, and failed to pay that attorney, a condition for retaining new counsel. Alevras alleges that the judge refused to contact Tacopina, and Alevras defended himself at the hearing. Judge Greenaway revoked the defendant's bail and remanded him to custody. Alevras alleges that, based on the "uncounseled statements" he made at the July 2 hearing, his bail was revoked, and the probation department filed an application to increase his offense level by five points.

On July 11, 1997, Tacopina filed a notice of appearance with the district court and a motion to reinstate Alevras' bail pending sentencing. Alevras was represented by Benfante and Kudman, associates of Tacopina, at the July 11, 1997 hearing to reinstate bail, which was denied by the court. Alevras alleges that Benfante and Kudman were "negligently, recklessly, willfully and wantonly unprepared to effectively represent Alevras" at the July 11 hearing, including their failure to appeal the July 2 ruling.

At an August 22, 1997 hearing, Tacopina renewed the motion to reinstate Alevras' bail. Alevras alleges that Defendants again acted negligently and recklessly because they failed to appeal the July 2 order, failed to appeal the order to pay Bronster for his CJA services, and failed to contest the admissibility of Alevras' "uncounseled" statements at the July 2 hearing.

In October of 1997, Alevras met with the present Defendants to discuss the status of his criminal case. Alevras alleges that they erroneously advised him that, among other things, there was no factual or legal basis to challenge the July 2 ruling or to seek the recusal of Judge

-3-

**FOR PUBLICATION**

Greenaway. It is also alleged that Alevras was advised that his best interests would be served by proceeding to the plea agreement without filing objections to the pre-sentence report. On October 7, 1997, Defendants presented to Alevras an amended plea agreement, where, in consideration for the United States withdrawing the 5 point enhancement in his sentencing, Alevras would agree to a limited waiver of his direct appeal and post-conviction rights. Alevras alleges that Defendants negligently, recklessly and willfully advised Alevras to sign the amended plea agreement. On October 14, 1997, the court accepted the amended plea agreement, and sentenced Alevras to 87 months. On October 21, 1997, Alevras surrendered and began serving his sentence.

Alevras alleges that after his sentencing, he faxed a request to Tacopina instructing Defendants to prepare a notice of appeal on the 99 and 172 cases and to transmit this notice to Alevras for him to file *pro se*. Defendants claim that they prepared the notice of appeal and sent it to the address Alevras provided, but it was returned to their office one week later because Alevras was no longer incarcerated at the location indicated on the fax. Defendants claim that by this time, the deadline to file an appeal had passed. Defendants also note that, despite Alevras' instruction that Defendants should not file a notice of appeal on his behalf, they drafted and filed a notice of appeal along with a motion to extend the time to file a notice of appeal on the basis of excusable neglect. Judge Greenaway denied the motion. Alevras alleges that Defendants refused to comply with the instructions contained in his October 27 fax, and that they negligently, recklessly and willfully "misprepared" and "misfiled" the notice of appeal and failed to transmit a copy of the defective notice to Alevras.

-4-

**FOR PUBLICATION**

After Alevras' guilty plea was entered, he brought a 28 U.S.C. § 2255 motion, *pro se*, alleging ineffective assistance of counsel. The court denied Alevras' § 2255 motion on the grounds that he had entered into his plea agreement voluntarily and that he received effective assistance of counsel. Alevras appealed the denial to the Third Circuit, which directed Judge Greenaway to hold a hearing on two issues: (1) whether Alevras made a timely request of his counsel to file a notice of appeal; and (2) whether Tacopina told Alevras that the District Court would remand him immediately and give him a five-point upward enhancement if he refused the plea agreement, but would sentence him to the bottom of the guideline range if he accepted it.

At the hearing, Judge Greenaway found that the evidence established that Alevras had asked Tacopina <u>not</u> to file a notice of appeal on his behalf, and that neither the court nor Tacopina had suggested to Alevras that his acceptance of the plea agreement would influence the length of his sentence. The court denied Alevras' § 2255 petition a second time which was subsequently upheld by the Third Circuit and a petition for a writ of certiorari was denied by the Supreme Court. The civil suit now before this Court is based on the same allegations regarding the services provided to Alevras by Defendants which were challenged in Alevras' § 2255 petition. Alevras' complaint alleges seven causes of action: (1) negligence or legal malpractice; (2) willful and wanton misconduct; (3) breach of express or implied warranties; (4) fraudulent misrepresentation; (5) fraudulent concealment; (6) breach of fiduciary duty/unethical conduct; and (7) failure of consideration.

On October 28, 2003, Defendants filed a motion to dismiss, challenging the adequacy of the Affidavit of Merit filed with the complaint. That Affidavit is required by New Jersey law to

**FOR PUBLICATION**

begin a legal malpractice suit. The Court denied Defendants' motion on December 21, 2004. Defendants have since filed a separate motion for summary judgment based on theories of collateral estoppel, res judicata and New Jersey's Entire Controversy Doctrine. Defendants also brought a second motion to dismiss for failure to state a claim.

**LEGAL STANDARD**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir.

**FOR PUBLICATION**

2001). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**DISCUSSION**

Defendants argue that the doctrine of collateral estoppel should apply to prevent Alevras from raising his malpractice claims. Specifically, Defendants argue that Judge Greenaway's earlier rejection of Alevras' claim of ineffective assistance of counsel estops him from bringing his current civil suit. Defendants contend that Alevras had a full and fair opportunity to raise his concerns regarding his criminal defense and Judge Greenaway's decision to dismiss the 2255 petition precludes Alevras from now asserting a contract claim for legal malpractice.

The doctrine of collateral estoppel, often referred to as issue preclusion, as applied in New Jersey, requires demonstration of the following elements: (1) the issue presented in the earlier action was identical to the one raised in a later action; (2) there was a final judgment on the merits; (3) the party asserting the issue earlier is the same or is in privity with the party currently raising the issue; (4) the party was given a full and fair opportunity to litigate the issue; and (5) the determination of the issue was essential to the final judgment. See Matter of the Estate of Dawson, 136 N.J. 1, 20 (1994). The concept of collateral estoppel is distinct from that of res judicata, or claim preclusion, and operates broadly to prevent a party from litigating issues that have been adjudicated and decided previously by another court.

-7-

**FOR PUBLICATION**

The precise issue presented to this Court is whether a federal court, having addressed Alevras §2255 petition which alleged ineffective assistance of counsel, finally and fully addressed the same issues raised in Alevras' present civil action for legal malpractice such that collateral estoppel applies to bar those claims. A defendant who claims that his attorney's performance was ineffective must demonstrate:

> First . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). As a general matter, counsel is deemed effective if his performance is reasonable under prevailing professional norms. Id. at 688. To prevail, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

After remand from the Third Circuit, Judge Greenaway determined that there was no factual basis for Alevras' claim that Defendants' criminal representation had been ineffective. Indeed, Judge Greenaway noted "that [defendants] Tacopina and Kudman are both extremely experienced defense attorneys." (Tacopina Decl., Exh. A. at 13.) As Strickland instructs, a determination of effectiveness necessarily presumes that counsel has acted reasonably under the prevailing professional standards. Id. at 688. Moreover, a cause of action for legal malpractice in New Jersey requires "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate

**FOR PUBLICATION**

causation of the damages claimed by the plaintiff." Jerista v. Murray ---A.2d ---, 2005 WL

2509874 (N.J. October 12, 2005) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).  Judge

Greenaway's denial of Alevras' claim that he received ineffective assistance of counsel

necessarily negates the second element of his legal malpractice claim.  Indeed, some courts

recognize that the standard of proof for a claim of ineffective assistance of counsel and legal

malpractice are equivalent, such that a decision in one would generally have preclusive effect in

another.  See McCord v. Bailey, 636 F.2d 606, 609 (D.C. Cir. 1980).

The specific question here, whether the rejection of a defendant's post-conviction,

collateral claim of ineffective assistance of criminal defense counsel estops a civil claim for legal

malpractice, is unique and has not been directly addressed by any New Jersey court.  Considering

a similar issue, one New Jersey court found that a defendant who clearly and unconditionally

pled guilty to a criminal offense, could not later maintain a malpractice case against his defense

attorney for the "speculative thesis" that a better outcome would have arisen had his counsel used

"different tactics."  Alampi v. Russo, 345 N.J. Super. 360, 368-71 (App. Div. 2001).  The

Alampi court examined a litany of state cases from other jurisdictions that required plaintiffs who

allege legal malpractice on the part of criminal attorneys, often referred to as criminal

malpractice, to "obtain post-conviction relief before creating a jury issue in a legal malpractice

claim."  Id. at 370.  The court declined to mandate a bright line test for such claims, but

nonetheless dismissed plaintiff's malpractice claim based on the specific facts of the case.[1]

---

[1]  In general, the rationale for requiring a plaintiff to demonstrate post-conviction relief in
a later civil claim is that, without a finding of innocence, the harm to plaintiff is the conviction
itself, not the ineffectiveness of his counsel.  As such, a failure to demonstrate post-conviction

**FOR PUBLICATION**

Apart from those jurisdictions that require a showing of post-conviction relief to demonstrate the proximate cause of damage in a legal malpractice claim, a requirement absent from New Jersey jurisprudence, other jurisdictions have recognized that the specific denial of post-conviction relief in the form of a petition for ineffective assistance of counsel is sufficient to collaterally estop a later claim for malpractice. Most notably, the D.C. Circuit Court of Appeals explicitly rejected a plaintiff's claim for malpractice against his former criminal attorney and applied collateral estoppel when plaintiff "had every incentive in his criminal proceedings to argue aggressively for his claim of ineffective assistance of counsel" and was given a "full and fair opportunity to prove his case." McCord, 636 F.2d at 610. In McCord, the plaintiff was arrested in connection with his participation in the events surrounding the Watergate break-in. He was tried and convicted in federal court, and appealed the decision claiming ineffective assistance of counsel and alleging that his attorneys were disloyal. Both the district court and the circuit court examined his claims of ineffective assistance of counsel and found them meritless. Id. at 608. From this determination, the district court, later affirmed by the circuit court, dismissed McCord's civil malpractice suit against his criminal attorneys. The Court cited collateral estoppel and McCord's failure to allege a legally cognizable injury as the basis for granting summary judgment. Id. at 611.

---

relief seemingly fails to satisfy the proximate cause of damage element of a claim for legal malpractice under New Jersey law. See Weiner v. Mitchell, Silberberg & Knupp, 170 Cal. Rptr. 533 (Cal. Ct. App. 1980) (noting that plaintiff's damages were caused by guilt of the underlying offense, not by negligence of counsel); see also McCord, 636 at 611-12.

**FOR PUBLICATION**

The McCord court's application of collateral estoppel to bar a later claim for malpractice

has been routinely followed by other jurisdictions. See, e.g., Bigelow v. Knight, 737 F. Supp.

669 (D.D.C 1990); People ex rel. Snead v. Kirkland, 462 F.Supp. 914 (E.D. Pa. 1978); U.S. v.

Barner, 285 F. Supp. 2d 568 (M.D. Pa. 2003); Kowalczyk v. Gilroy, 994 F. Supp. 410 (E.D.N.Y.

1998); Zeidwig v. Ward, 548 So. 2d 209 (Fla. 1989); Johnson v. Raban, 702 S.W.2d 134 (Mo.

App. 1985); Vavolizza v. Krieger, 33 N.Y.2d 351 (1974); Siddiqi v. Ober, Kaler, Grimes &

Shiver, 637 N.Y.S.2d 399 (N.Y. App. Div. 1996); Garcia v. Ray, 556 S.W.2d 870 (Tex. Ct. App.

1977); Hockett v. Breunig, 526 N.E.2d 995 (Ind. Ct. App. 1988); Younan v. Caruso, 59 Cal.

Rptr. 2d 103 (1996); Knoblauch v. Kenyon, 415 N.W.2d 286 (Mich. Ct. App. 1987); Schiff v.

Williams, 1991 Conn. Super. LEXIS 301 (Conn. Super. Ct. Feb. 7, 1991); Alberici v. Tinari,

542 A.2d 127 (Pa. Super. Ct. 1988). In discussing the policy of rejecting such criminal

malpractice claims, the Alberici court reasoned that,

> [w]here the issue of ineffectiveness of counsel has been fully explored in the criminal
> forum, and it has been determined that the counsel was not ineffective and the
> defendant's conviction has been sustained, it would be totally unreasonable to allow
> the question of effectiveness to again be questioned in a civil trial. Such a procedure
> would require a complete review of the criminal proceedings to determine if counsel
> did or did not act in such a way that his conduct, or lack thereof, prejudiced the
> criminal defendant. That question, having already been determined in the underlying
> criminal proceeding, may not again be the subject of judicial inquiry in a civil
> proceeding.

Alberici, 542 A.2d at 133. Similarly, the Raban court explained its justification for the

application of collateral estoppel to bar a civil malpractice claim against a criminal defense

attorney:

> [P]ublic policy dictates that a person convicted of a crime who has failed in his attack
> upon his conviction both directly and collaterally should not be permitted to recover

-11-

**FOR PUBLICATION**

> against his attorney in a civil malpractice action for damages allegedly arising out of the attorney's handling of his defense. It would undermine the effective administration of the judicial system to ignore completely a prior decision of a court of competent jurisdiction in this state on the same issue which plaintiff seeks to relitigate in a subsequent action.

Raban, 702 S.W.2d at 138. While the New Jersey Supreme Court has not specifically addressed the issue, this Court is persuaded by the majority of courts which have rejected civil claims for criminal malpractice when claims for ineffective assistance of counsel have been adjudicated, decided and rejected in the underlying criminal proceeding.[2] Here, Alevras petitioned a judge for a reduction in his sentence based on numerous allegations of ineffective assistance of counsel and other allegations that his attorneys had mislead him in accepting his guilty plea. That petition was denied. Alevras has now raised the same set of allegations in asserting his civil claim for legal malpractice.

Even allowing that Alevras' malpractice claim is based on a slightly different set of facts from those addressed in his §2255 petition, this is not sufficient to bar the application of collateral estoppel. Blonder-Tongue Laboratories, Inc. v. University of Ill. Found., 402 U.S. 313, 324-25 ("A party who has had one fair and full opportunity to prove a claim and has failed in that effort should not be permitted to go to trial on the merits of that claim a second time."). The facts regarding Defendants alleged malpractice were well known to Alevras at the time he made

---

[2] The Court also finds support for its decision in the fact, discussed above, that demonstration of proximate cause of damage is a necessary element of a claim for legal malpractice under New Jersey law and a failure to demonstrate post-conviction relief amounts to a failure to allege a legally cognizable injury. While the Court recognizes that the Alampi court refused to establish a bright line rule with regard to this defense, the rationale for that decision is applicable here.

**FOR PUBLICATION**

his claim of ineffective assistance of counsel and he was given a full and fair opportunity to raise those issues with Judge Greenaway. See Schiff, 1991 Conn. Super. LEXIS 305, at *12-13 (rejecting plaintiff's argument that he should not be precluded from raising acts and omissions of his counsel not addressed in his §2255 petition because "[plaintiff] could have pled all allegations of negligence at the habeas corpus proceeding"). In fact, Judge Greenaway, pursuant to remand from the Third Circuit, held *multiple* evidentiary hearings to resolve whether Alevras' claim of ineffective assistance of counsel had any merit.[3] At that time, Alevras was provided an opportunity to fully pursue the concerns he had with regard to his attorneys' effectiveness. Judge Greenaway ultimately determined that Alevras' criminal defense representation was effective and denied Alevras' petition. Plaintiff now "seeks to relitigate issues concerning the quality of his criminal trial counsel that he raised in the course of the criminal proceedings . . . and lost," and as such, "he cannot raise the claims anew in a civil case." McCord, 636 F.2d at 611.

Plaintiff is collaterally estopped from bringing this action for legal malpractice. Summary judgment is appropriate and the Court need not consider Defendants' additional arguments in their brief for summary judgment or their motion to dismiss. Alevras' complaint is dismissed with prejudice and without leave to replead.

**CONCLUSION**

---

[3] Judge Greenaway held evidentiary hearings on April 9, 14 and 25, 2001 and May 4, 2001.

**FOR PUBLICATION**

For the reasons stated above, Defendants' motion for summary judgment is granted and.

Plaintiff's complaint is dismissed with prejudice.  An appropriate order follows.

William H. Walls, U.S.D.J.